**2007 BNH 045**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:                                                                    Bk. No. 03-13626-MWV
                                                                          Chapter 7
Charwill Construction, Inc.,
                    Debtor

Michael S. Askenaizer,
Chapter 7 Trustee,
                    Plaintiff

v.                                                                        Adv. No. 05-1189-MWV

Seacoast Redimix Concrete, LLC,
                    Defendant


*David P. Azarian, Esq.*
*WENSLEY, JONES & AZARIAN, P.L.L.C.*
*Attorney for Chapter 7 Trustee*

*John M. Sullivan, Esq.*
*PRETI FLAHERTY PLLC*
*Attorney for Seacoast Redimix Concrete, LLC*


**MEMORANDUM OPINION**

Michael Askenaizer (the "Plaintiff"), as Chapter 7 trustee for Charwill Construction, Inc. (the

"Debtor"), filed a complaint against Seacoast Redimix Concrete, LLC ("Seacoast"), to avoid certain

payments the Debtor transferred to Seacoast within the ninety-day period preceding the filing of the

bankruptcy petition.  Presently before the Court is Seacoast's second motion for summary judgment,

which alleges that (1) the subject payments cannot be avoided because new value was contemporaneously

exchanged for them and (2) the funds at issue were not the Debtor's property but trust funds.  The Court

heard oral arguments on December 4, 2007, and took the matters under advisement.

## JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with section 157(b).

## BACKGROUND

Prior to filing its voluntary Chapter 7 petition, the Debtor was engaged in a construction project to build a wastewater treatment facility (the "Project") for the Town of Durham (the "Town").  The Town was the Project owner, the Debtor was the general contractor, and Seacoast was a subcontractor that supplied concrete to the Debtor.  In accordance with N.H. RSA § 447:16, the Project was secured by a bond to ensure payment to all laborers and suppliers, issued by St. Paul Surety Company.

While the Project was ongoing, Seacoast completed its obligations under the subcontract and submitted applications for payment and lien waivers to the Debtor, which were required to receive payment.  The Debtor then forwarded Seacoast's lien waivers to the Town, because submission of such lien waivers was required for the Debtor to receive payment from the Town.  Upon receipt of the waivers, the Town made a payment to the Debtor.  The Debtor applied those funds to pay Seacoast $6,652 on August 28, 2003, and $10,026 on October 22, 2003 (the "Payments").  Shortly thereafter, on October 24, 2003, the Debtor filed for protection under Chapter 7 of the Bankruptcy Code.  The Plaintiff then brought this adversary proceeding to avoid the Payments.

## DISCUSSION

Seacoast moves for summary judgment on two grounds.  First, Seacoast alleges that the Debtor received "new value" by its release of statutory lien rights and thus, the Payments cannot be avoided

pursuant to 11 U.S.C. § 547(c)(1).  Second, Seacoast alleges that the Payments were not the Debtor's "property" because they were trust funds and thus, the Payments cannot be avoided under section 547(b).

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FRCP 56(c).  An issue is "genuine" when "the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party."  Rodriquez-Pinto v. Tirado-Delgado, 982 F.2d 34, 38 (1st Cir. 1993) (quoting United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)).  A fact is "material" when it has "the potential to affect the outcome of the suit under the applicable law."  Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).  Courts faced with a motion for summary judgment should read the record "in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor."  Maldonado-Denis v. Castillo-Rodriquez, 23 F.3d 576, 581 (1st Cir. 1994).

## I.  "New Value" Defense

The material facts are undisputed, but there is no stipulated factual background.  Seacoast agreed to release its statutory lien rights in exchange for the Payments, and Seacoast released them by submitting lien waivers to the Debtor.  Seacoast's waivers expressly released "any and all lien or right of lien on said above project and premises under the Law, in relation to Mechanic's Liens Law, on account of labor and materials, or both, furnished by the undersigned to or on account of the said contract for the said project[.]"  (Def.'s Ex. D.)  The threshold issue is what lien rights arise under New Hampshire law in bonded, public construction projects.

### Lien Rights under RSA § 447:15

Sections 447:15 and 447:16 are the applicable law.  Section 447:15 provides that lien rights "attach to *any money* due or to become due *from the state or from any political subdivision* thereof by virtue of any contract for any public work or construction, alteration, or repair, in the performance of which contract the lienor participated by performing labor or furnishing materials or supplies."  N.H. R.S.A. § 447:15 (emphasis added).  Section 447:16 requires "persons who contract in behalf of the state or any political subdivision thereof for the construction . . . of public buildings . . . shall if said contract involves an expenditure of $25,000 . . . *obtain as a condition precedent to the execution of the contract, sufficient security, by bond or otherwise,* in an amount equal to at least 100 percent of the contract price[.]"  § 447:16 (emphasis added).

In reading these two provisions together, the Court refers to the Supreme Court of New Hampshire's decision in <u>Guard Rail Erectors v. Standard Surety & Casualty Company</u>, 168 A. 903 (1933).  The case of <u>Guard Rail Erectors</u> involved a bonded, public construction project.  There, the surety alleged that the subcontractor could not sue under the bond because only lienors could bring suit. The surety argued that the subcontractor did not have a lien because it failed to notify the state of its intention to claim it.  However, the Court found that notice is not required to create a lien, and a lien in bonded, public construction projects, "arises according to the performance of the contract."  <u>Id.</u> at 903. As for the bond, the Court explained, it serves as "an alternative security to lienors, in general more practically adapted to protect them and at the same time to save the state or municipality from annoyance."[1]  <u>Id.</u>

As such, this Court concludes that under New Hampshire law, statutory lien rights to money owed by the political subdivision arise automatically upon contract performance and the bond is

---

[1] Finding that notice is required only for the *preservation* of a lien and preservation of a lien is unnecessary to bring suit under a bond, the Court held that the subcontractor could sue the surety under the bond.  <u>Guard Rail Erectors</u>, 168 A. at 903-04.

alternative security.  Since Seacoast waived all lien rights arising "under the Law," it follows then that Seacoast released its lien rights against the Town, which existed notwithstanding the St. Paul Surety Company bond.  The Court finds it of no consequence that these lien rights attached to money and not real estate, which is typical of mechanic's liens, so long as Seacoast had right to lien on some property. Although there may be an issue as to whether statutory lien rights also attach to bond proceeds in a bonded construction project, the Court finds such issue immaterial for the purposes of deciding this matter.

### Release of Lien Rights as "New Value"

Section 547(b) allows a trustee to invalidate certain pre-bankruptcy transfers.  See 11 U.S.C. § 547(b).  However, section 547(c) limits the trustee's avoidance powers, providing in relevant part that:

> (c)  The trustee may not avoid under this section a transfer –
>
>> (1)  to the extent that such transfer was –
>>
>>> (A)  intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>>>
>>> (B)  in fact a substantially contemporaneous exchange[.]

§ 547(c)(1).  "'[N]ew value' means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation."  § 547(a)(2).  "New value" is measured at the time of the transfer at issue.  In re Grand Chevrolet, Inc., 25 F.3d 728, 733 (9th Cir. 1994).  The legal issue before the Court is whether Seacoast's release of its statutory lien rights against the Town constituted "new value" within the meaning of section 547(c)(1).

Case law is divided on the issue of whether release of inchoate lien rights constitutes new value. See In re J.A. Jones, Inc., 361 B.R. 94, 100 (Bankr. W.D.N.C. 2007) (defining "inchoate" lien rights as lien rights that could have been perfected and enforced against the project in the absence of payment).

- 5 -

However, one court aptly identified that, "the primary variant in these cases is whether, at the time of the preference payment, the owner still owed sufficient sums to the debtor on the project to permit a setoff against the owner's payment to the sub." Id. at 103; see Nordberg v. Arab Banking Corp. (In re Case & Sanborn Corp.), 904 F.2d 588, 596 (11th Cir. 1990) (stating that a subcontractor's release of lien rights that causes a consequent release of the debtor's contingent obligation to an unsecured creditor, does not amount to new value to the debtor); In re Fuel Oil Supply & Terminaling, Inc., 837 F.2d 224, 230 (5th Cir. 1988) (holding that the defendant's release of letters of credit which caused a bank's concomitant release of the debtor's collateral constituted new value, while clarifying that a project owner's unsecured right of indemnity against the debtor is not new value). That court concluded that "[i]f the owner still owes the debtor, then its indemnity claim can be setoff and is secured."[2] J.A. Jones, 361 B.R. at 103. In such case, the subcontractor's release of lien rights against the owner causes "a coincident release of the owner's [secured] claims against debtor, thereby creating new value to the debtor." Id. at 102. "If there is no debt to be setoff, however, then the owner's claim for indemnification is simply an unsecured debt and there is no 'new value.'" Id. at 103. The Court agrees with this approach.

Moreover, this approach is consistent with the congressional goals underlying section 547. As the Fifth Circuit explained in Fuel Oil Supply & Terminaling, preference sections in the Bankruptcy Code were set up to ensure "equity among *unsecured* creditors by forcing these creditors to share the debtor's unencumbered assets on a pro rata basis." 837 F.2d at 227 (emphasis added). There is less concern for recovering transfers made to secured creditors, because a "fully secured creditor is not required to share with other creditors on a pro rata basis because the collateral underlying his secured interest entitles him to the value of his claim[.]" Id. Thus, section 547(c) exempts certain preferential transfers that do not further its congressional purpose. Id.

---

[2] The J.A. Jones court relied on the "indirect transfer" theory, which operates on the assumption that the debtor-contractor does not pay its subcontractor, in which case, the subcontractor would lien against the project and cause the project owner to pay the subcontractor, and the contractor would pursue indemnity claims against the debtor that is secured by the contract balance owed to the debtor. 361 B.R. at 102.

Therefore, "[w]here the creditor's indirect lien is fully secured by assets of debtor, the preferential transfer can be protected by the new value exception."  In re Gem Const. Corp. of Virginia, 262 B.R. 638, 646 (Bankr. E.D. Va. 2000).  "New value may be furnished by a third party, provided that the effect is to make the unsecured creditor body, in its entirety, whole by the third party releasing liens or otherwise increasing assets distributable to the entire unsecured creditor body."  In re Philip Services Corp., 359 B.R. 616, 632 (Bankr. S.D. Tex. 2006).  The debtor receives new value from the release of inchoate lien rights, equal to the amount of the secured portion of the owner's indemnity claim against the debtor.  See In re Powerine Oil Co., 59 F.3d 969, 973 (9th Cir. 1995).  Although the cases cited above did not involve bonded, public construction projects, the Court finds them applicable because the tripartite relationship common in the referenced cases, exists in the case at hand, namely, the Town as the project owner, the Debtor as the contractor, and Seacoast as the subcontractor.

Turning to the instant case, at the time of the transfer in 2003, the Town's contract balance exceeded the $16,678 that the Debtor transferred to Seacoast.  This fact is deduced from the Town's contract balance when it accepted the Project in 2005, which was over $200,000.  (Def.'s Ex. E.)  Thus, the Town would have held a fully secured indemnity claim if the Debtor defaulted.  It follows then that Seacoast's release of statutory lien rights against the Town was "new value," because it caused the coincident release of the Town's fully secured indemnity claim against the Debtor, which in turn left the bankruptcy estate whole for unsecured creditors.  Therefore, the Court holds that Seacoast's release of lien rights conferred "new value" to the Debtor in a substantially contemporaneous exchange and the Payments cannot be avoided under section 547(b).

## II.  Trust Defense

Seacoast alleges that the Payments were not "property" of the Debtor but funds held in an express trust for Seacoast's direct benefit.  Section 547(b) allows the trustee to avoid certain transfers but only if

they are transfers of an "interest of the debtor in property."[3]  11 U.S.C. § 547(b).  "Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate' . . . [n]or is such an equitable interest 'property of the debtor' for purposes of    § 547(b)." Begier v. IRS, 496 U.S. 53, 59 (1990).

Generally, state law determines the existence and legal source of a trust relationship.  Connecticut General Life Ins Co. v. Universal Ins. Co.., 838 F.2d 612, 618 (1988); see Butner v. United States, 440 U.S. 48, 54 (1979) (stating that "[p]roperty interests are created and defined by state law . . . [u]nless some federal interest requires a different result").  No New Hampshire statute provides for the automatic creation of a trust for construction project proceeds.  Instead, to create a trust, although technical language and formalities are not required, there must be intent to create the trust by the parties.  Trustees of Pembroke Academy v. Epsom School Dist., 75 A. 100, 101 (1910).

Here, the issue of intent is material for determining whether a trust was created by the Town for Seacoast's benefit.  Seacoast alleges that the Town paid over certain funds for the express purpose of paying Seacoast's invoices.  In support, Seacoast only offers the fact that the Debtor could not receive payment from the Town unless Seacoast submitted lien waivers and payment applications.  The Plaintiff alleges there is no evidence of a trust and no evidence to show that the Debtor could not use the funds with unfettered discretion once they were deposited into its account.  There is a genuine issue regarding whether the Town intended to create a trust, and the Court cannot grant summary judgment on the matter.

---

[3] The Bankruptcy Code does not define "property of the debtor," but it has been "best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings."  Begier, 496 U.S. at 58.  Section 541(d) excludes certain property from the estate.  It specifically provides that property in which the debtor holds only a legal title and not an equitable interest "becomes property of the estate  . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."  § 541(d).

## <u>CONCLUSION</u>

The Court grants summary judgment in favor of Seacoast on its "new value" defense and denies summary judgment on the trust defense.  This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate final judgment consistent with this opinion.

DATED this 21st day of December, 2007, at Manchester, New Hampshire.

<u>/s/ Mark W. Vaughn    </u>
Mark W. Vaughn
Chief Judge